JOHN LLOYD, Plaintiff, *v.* T. HOGAN & SONS, INC. Defendant.

City Court of New York, February 2, 1927.

**Ships and shipping — action for personal injuries suffered by plaintiff while employed as stevedore on lighter putting coal aboard steamship moored at pier in navigable waters — motion, striking out defenses made more than ten days after service of answer, timely, under Civil Practice Act, § 98, and Rules of Civil Practice, rule 109 — plaintiff was seaman within meaning of Jones Act — separate defense, setting up negligence of fellow-servant stricken out — defenses of contributory negligence and assumption of risk, proper, in absence of allegation that violation by employer of statute enacted for safety of employees, contributed to injury — admiralty rule of comparative negligence applicable.**

Rule 109 of the Rules of Civil Practice, requiring that a motion to strike out separate defenses as insufficient in law must be made within ten days after the service of the answer, must be read in conjunction with section 98 of the Civil Practice Act, which authorizes a court " upon good cause shown " to extend the time for making the application for such a motion.

Accordingly, the plaintiff, in an action to recover for personal injuries suffered while employed by the defendant as a stevedore on a lighter, putting coal aboard a steamship moored at a pier in navigable waters, is entitled to be heard upon a motion to strike out separate defenses of contributory negligence, the fellow-servant rule and assumption of risk set up in defendant's answer, notwithstanding the fact that said motion was not made within ten days after the service of the answer, since it appears that the basis of plaintiff's motion is a decision of the United States Supreme Court, which was not available to the plaintiff within ten days after the answer was served upon him, particularly where, upon learning of the decision, he promptly made the motion.

The second separate defense in defendant's answer, which sets up the negligence of a fellow-servant, must be stricken out, for a stevedore, employed as was plaintiff at the time of his injury, is a seaman, within the meaning of the Jones Act, which does away with the fellow-servant rule in the case of personal injuries.

The separate defenses of contributory negligence and assumption of risk are

properly pleaded in the absence of any allegation that defendant's violation of any statute, enacted for the safety of employees, contributed to the injury of which the plaintiff complains. The separate defense of contributory negligence, however, will be limited on the trial by the admiralty rule of comparative negligence.

Action for personal injuries sustained by the plaintiff while in the employ of the defendant.

*M. Weinstein,* for the plaintiff.

*Platt, Field & Taylor,* for the defendant.

Shientag, J. The plaintiff at the time he claims he was injured was employed by the defendant as a stevedore on a lighter, and at the time of the injury assisted in the loading of coal from the lighter to a steamship moored at a pier. The injury was, therefore, to a person engaged in a maritime service and occurred in navigable waters. The defendant after interposing what in effect is a general denial as to the allegations of negligence, sets up three separate defenses: *First,* contributory negligence; *second,* the fellow-servant rule; and *third,* assumption of risk. The defendant's answer was served on October 10, 1926. The plaintiff moved on November 13, 1926, to strike out the separate defenses as insufficient in law. The defendant's preliminary objection is that under rule 109 of the Rules of Civil Practice, such a motion must be made within ten days after the answer is served. That rule, however, must be read in connection with section 98 of the Civil Practice Act, which authorizes the court, except where such action is specifically prohibited by statute, to extend the time for the making of any motion " upon good cause shown although the application for same is not made until after the expiration of the time appointed or allowed." There is no provision prohibiting the court from extending the time within which to move to strike out a separate defense as insufficient in law, and such extension may, therefore, be granted for good cause. (See *Fiorello* v. *N. Y. Protestant, etc., Socy.,* 217 App. Div. 510.) The basis of the plaintiff's motion is the decision in *International Stevedoring Company* v. *Haverty* (272 U. S. 50), rendered by the United States Supreme Court on October 18, 1926, which was certainly not available to the plaintiff within ten days after the defendant's answer was served upon him. Upon learning of this decision plaintiff promptly made the motion, which is now pending. In the *Haverty Case (supra)* the action was for personal injuries sustained by the plaintiff, a longshoreman, while engaged in stowing freight in the hold of a vessel. The action was against the stevedoring company which employed him. The United States Supreme Court held that the

plaintiff in that case was engaged in a maritime service formerly rendered by the ship's crew, and was entitled to the benefit of the so-called Jones Act (38 U. S. Stat. at Large, 1185, chap. 153, § 20, approved March 4, 1915, as amd. by 41 id. 1007, chap. 250, § 33, approved June 5, 1920), which provides that " any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, * * * and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." The court, in construing the scope of the provision of the Jones Act above quoted, said: " It is true that for most purposes, as the word is commonly used, steve-- dores are not ' seamen.' But words are flexible. The work upon which the plaintiff was engaged was a maritime service formerly rendered by the ship's crew. (*Atlantic Transport Co.* v. *Imbrovek,* 234 U. S. 52, 62.) We cannot believe that Congress willingly would have allowed the protection to men engaged upon the same maritime duties to vary with the accident of their being employed by a stevedore rather than by the ship. The policy of the statute is directed to the safety of the men and to treating compensation for injuries to them as properly part of the cost of the business. If they should be protected in the one case, they should be in the other. In view of the broad field in which Congress has disapproved and changed the rule introduced into the common law within less than a century, we are of opinion that a wider scope should be given to the words of the act, and that in this statute ' seamen ' is to be taken to include stevedores engaged as the plaintiff was, whatever it might mean in laws of a different kind." The questions to be determined by this motion are, therefore: *First,* whether a stevedore engaged as the plaintiff was at the time of his injury may be termed to be a seaman within the meaning of the Jones Act, above referred to, and, *second,* if he shall be so included, to what extent have the common-law defenses to a negligence action been limited in his case? Since the decisions of the United States Supreme Court in *Southern Pacific Co.* v. *Jensen* (244 U. S. 205, 223 [1917]) and *Knickerbocker Ice Company* v. *Stewart* (253 id. 149 [1920]) the lot of an injured longshoreman has not been a particularly happy one. In the *Jensen Case* (*supra*), which was decided by a closely divided court (HOLMES, PITNEY, BRANDEIS and CLARKE, JJ., dissenting), it was held in effect that the New York Workmen's Compensation Law did not apply to injuries sustained by a person in a maritime employment where his injury occurred in navigable waters. In that case the longshoreman was killed at the ship-end of a gangway while unloading his employer's

steamship. The basis of the court's decision was in substance that the provisions of the New York State Workmen's Compensation Law when applied to maritime injuries were void, as being in contravention of article 3, section 2, of the United States Constitution, which extended the judicial power of the Federal government to " all cases of Admiralty and maritime Jurisdiction " and of the provisions of the Federal Judicial Code adopted pursuant thereto. In the *Stewart Case* (*supra*) the court (the same four justices dissenting) held to be unconstitutional an amendment to the Federal Judicial Code saving claimants' rights under State workmen's compensation laws in situations otherwise governed by *Southern Pacific Co.* v. *Jensen.* The court held that this attempted amendment was unconstitutional, as being a delegation of the legislative powers of Congress to the several States and as being in conflict with the purpose of the Constitution with reference to uniformity of the maritime law. The confusion which it was predicted at the time would result from these decisions certainly came to pass, and brought about many curious results. In a subsequent case, for example, that of *State Industrial Commission* v. *Nordenholt Corporation* (259 U. S. 263 [1922]) the United States Supreme Court held that the New York State Workmen's Compensation Law did apply to an injury received by a longshoreman employed under a maritime contract who was injured on a dock, " an extension of the land." Thus the longshoreman acquired a sort of dual personality. Working for the same employer, doing the same kind of work, his right to compensation under the State Workmen's Compensation Law depended upon whether his injury was received on the dock or on the vessel. If he were injured on a gangplank between the vessel and the shore his rights depended upon the precise spot where the tort was consummated. (For an interesting and instructive note covering this entire subject see Harvard Law Review, January, 1927, p. 485.) The decision in the *Haverty Case* (*supra*), in so far as it removes and limits certain antiquated and harsh common-law defenses in negligence actions, is, of course, helpful to injured longshoremen who come within its provisions. It will, however, bring about a situation whereby three distinct rules of liability may attach to an injury to a longshoreman, dependent upon the precise nature of the work that he was doing at the time he was injured and the place where the accident occurred. It is not surprising, therefore, that for a number of years legislation has been pending in Congress to provide Federal accident compensation for longshoremen and other harbor workers in order to secure some uniformity in the treatment of cases involving injuries sustained by them. In the *Haverty* case,

as has been stated, the injury was received by the longshoreman while he was engaged in stowing cargo in the hold of a vessel. Logically, the same rule should apply to this case, where, at the time the stevedore was injured, he was engaged in a maritime service on a lighter in navigable waters assisting in the loading of a vessel likewise moored in navigable waters. In the case of *Atlantic Transport Co.* v. *Imbrovek* (234 U. S. 52, 61), cited in the *Haverty Case* (*supra*), the court said: " The libelant was injured on a ship, lying in navigable waters, and while he was engaged in the performance of a maritime service. * * * Upon its proper performance depend in large measure the safe carrying of the cargo and the safety of the ship itself; and it is a service absolutèly necessary to enable the ship to discharge its maritime duty. Formerly the work was done by the ship's crew; but, owing to the exigencies of increasing commerce and the demand for rapidity and special skill, it has become a specialized service devolving upon a class ' as clearly identified with maritime affairs as are the mariners.' " The plaintiff in the instant case was rendering substantially the same kind of maritime service as that referred to by Mr. Justice HUGHES in the foregoing quotation. The plaintiff, therefore, being a " seaman " within the meaning of the " Jones Act," referred to earlier in the opinion, when he brings his action to recover damages for personal injuries, comes within the provisions of that act that " all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply." It is conceded that the statutes do away with the fellow-servant rule in the case of personal injuries to railway employees. (*Second Employers' Liability Cases*, 223 U. S. 1, 49.) That being so, the motion to strike out the second separate defense in the answer, which sets up the negligence of a fellow-servant, must be granted. The Federal Employers' Liability Act (35 U. S. Stat. at Large, 65, chap. 149) changed the common-law rule on the subject of contributory negligence by providing in section 3 that the contributory negligence of the employee shall not bar a recovery. It does, however, continue the admiralty rule of comparative negligence, allowing damages to be diminished by the jury in proportion to the amount of negligence attributable to the injured employee. It also provides that no employee shall be held guilty of contributory negligence where the employer's violation of any statute enacted for the safety of employees contributed to the occurrence of the accident. In the instant case there is no allegation that any such statute was violated by the employer. The separate defense of contributory negligence will stand, therefore, although its application will, of course, be limited on the

trial to that of comparative negligence. The interesting question is whether, as to a stevedore employed as was the plaintiff in this case at the time of the accident, the defense of assumption of risk still holds good. So far as the Federal Employers' Liability Act itself is concerned, there is no doubt but that the defense of assumption of risk is available to a railway carrier or other employer coming under the act, except where a violation of a statute enacted for the safety of employees contributed to the injury. There is no claim in this case that any such statute was violated. (See *Panama R. Co.* v. *Johnson,* 289 Fed. 964.) There is a line of cases holding that the defense of assumption of risk does not apply to injuries to seamen on the theory that a seaman is by the very nature of his employment compelled to obey the orders of his superior officers. The stevedore in this case, however, is not a seaman in fact; he is included as a seaman in name only for the purpose of bringing him within certain beneficent provisions of a law enacted for the protection of seamen. So far as assumption of risk is concerned, it cannot be said as a matter of law that he is in any different position than an injured railway employee coming under the provisions of the Federal Employers' Liability Act. The motion to strike out as insufficient in law the third separate defense, setting up assumption of risk, is, therefore, denied. Motion to strike out the first and third separate defenses denied. Motion to strike out the second separate defense granted, with leave to the defendant to plead over upon payment of ten dollars costs on or before February 14, 1927. Order signed.